**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sara Marie Phillippi, an individual, on behalf of herself and the statutory beneficiaries of Joseph Phillippi, deceased; Angela Phillippi, an individual; Estate of Joseph Phillippi, a legal entity,<br><br>Plaintiffs,<br><br>vs.<br><br>Maricopa County, a political subdivision of the State of Arizona; Sheriff Joseph Arpaio, in his official capacity as Sheriff of Maricopa County; Betty Adams, in her official capacity as director of Correctional Health Services; Registered Nurse Donald McBride, in his individual and official capacities; Registered Nurse Joseph A. Ablett, in his individual and official capacities; Lt. J. McGlone, in her individual and official capacities; Nurse Practitioner Anna Hanson, in her individual and official capacities; Sandi Wilson, in her official capacity as Deputy County Manager,<br><br>Defendants. | No. CV-10-0763-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the following: (1) a Motion for Judgment on the Pleadings filed by Defendants Maricopa County, Betty Adams and Donald McBride (Doc. 12); (2) a Motion to Convert Motion for Judgment on the Pleadings to a Motion for Summary Judgment filed by Plaintiffs (Doc. 20); and (3) a Motion to Dismiss filed by Defendants

Joseph Ablett, Anna Hanson, and Sandi Wilson (Doc. 39). For the reasons stated below, the Court grants in part and denies in part Defendants' Motion for Judgment on the Pleadings (Doc. 12), grants in part and denies in part Defendants' Motion to Dismiss (Doc. 39), and denies as moot Plaintiffs' Motion to Convert Motion for Judgment on the Pleadings (Doc. 20).

## BACKGROUND

Plaintiffs' First Amended Complaint ("FAC") alleges as follows. (Doc. 18). On April 6, 2009, Phoenix police arrested Joseph Phillippi for trespassing, after he was found on another person's front yard, possibly intoxicated and in need of medical assistance. Mr. Phillippi was transported to the Fourth Avenue Jail. At the time of his arrest, Mr. Phillippi was taking Keppra, an anti-seizure medication, the abrupt discontinuation of which can increase the frequency of seizures, according to Plaintiffs. Plaintiffs assert that Maricopa County Correctional Health Services ("CHS") was aware that Mr. Phillippi was being prescribed this medication because during his September 2008 incarceration, he had to be hospitalized after CHS failed to timely provide him with Keppra. The Complaint also alleges that during his intake, Mr. Phillippi alerted staff to the fact that he had a history of seizures and was taking Keppra. Defendant Ablett noted that Mr. Phillippi appeared to be under the influence of drugs or alcohol, but he did not refer Mr. Phillippi for a medical assessment or treatment.

The next morning, Mr. Phillippi was assigned to Release Tank 1, which has "concrete floors, walls and barriers." Mr. Phillippi suffered a seizure, fell, and struck his head either on the "solid-surface fixtures or the cement cell floor." Medical staff arrived, finding Mr. Phillippi "on his back on the ground with noisy respirations", with an elevated pulse, and initially unresponsive. After being escorted to medical, Mr. Phillippi's vitals were checked, showing blood pressure of 195/103, pulse 135, and O2 saturation at 92% on room air.

Defendant Lt. McGlone ordered that provisions be made for Mr. Phillippi's immediate release. Defendant Hanson apparently approved the order. When Defendant McBride, a registered nurse, called for transport, he did not communicate any need for emergency

1 transport, and instead accepted transport within thirty minutes without lights or sirens. He
2 told the ambulance dispatcher that the county was not to be billed for the transportation.

3 Approximately ninety minutes after Mr. Phillippi suffered a seizure and hit his head,
4 he was transported to the hospital. During that time, he again became unresponsive. Upon
5 admission, he had a Glasgow Coma Scale of 4 and was found to have a massive subdural
6 hematoma. Life support was discontinued on April 8, 2009. The medical examiner concluded
7 that Mr. Phillippi died as a result of blunt force trauma to his head.

8 Plaintiffs raise a 42 U.S.C. § 1983 claim against all Defendants and a Negligence
9 and/or Gross Negligence against Defendants Arpaio and Maricopa County. Additionally,
10 Plaintiffs raise claims of wrongful death pursuant to A.R.S. § 12-611 (2011) and violations
11 of Article 2, Sections 2 and 15 of the Arizona Constitution, which the Court construes as
12 claims against Defendants Arpaio and Maricopa County, as discussed below.

## DISCUSSION

### I. Motion for Judgment on the Pleadings – Notice of Claim

15 A motion for judgment on the pleadings filed pursuant to Federal Rule of Civil
16 Procedure 12(c) is generally assessed under the same standard as a Rule 12(b)(6) motion to
17 dismiss for failure to state a claim. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.
18 1980). The Court must construe the pleadings "in the light most favorable to the nonmoving
19 party," *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir.
20 2005), and will only grant the motion "when, taking all the allegations in the non-moving
21 party's pleadings as true, the moving party is entitled to judgment as a matter of law."
22 *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). In ruling on such a motion, the
23 Court cannot consider evidence outside the pleadings unless the motion is treated as one for
24 summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* FED. R. CIV. P. 12(d).

25 Under Arizona's notice of claim statute, "[p]ersons who have claims against a public
26 entity or a public employee shall file claims with the person or persons authorized to accept
27 service for the public entity or public employee as set forth in the Arizona rules of civil
28 procedure within one hundred eighty days after the cause of action accrues." A.R.S. § 12-

821.01(A) (2011). The statute "permits an action against a public entity to proceed only if a claimant files a notice of claim that includes (1) facts sufficient to permit the public entity to understand the basis upon which liability is claimed, (2) a specific amount for which the claim can be settled, and (3) the facts supporting the amount claimed." *Backus v. State*, 220 Ariz. 101, 104, 203 P.3d 499, 502 (2009).

Defendants Maricopa County, Adams and McBride contend that Plaintiffs' notice of claim was deficient in the following ways: (1) it fails to name certain individual parties sued;[1] (2) it names the Clerk of the Maricopa County Board of Supervisors, but fails to state a claim against Maricopa County, the actual party sued; and (3) it does not explicitly state the amount for which Plaintiffs would be willing to settle their claims against the county separate and apart from the amount for which they would be willing to settle their claims against Defendant Sheriff Arpaio. (Doc. 12).

Plaintiffs' FAC states the following:

> As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim upon Defendants [sic] Arpaio and Defendant Maricopa County pursuant to A.R.S. § 12-821.01, which complied in all ways with the statute, was timely served, and deemed denied by operation of statute.

(Doc. 18). Plaintiffs are correct that under Rule 12(d) of the Federal Rules of Civil Procedure, if a court intends to consider matters outside the pleadings on a 12(c) motion, the court should treat the motion as one for summary judgment and provide the parties opportunity for discovery. The Court need not convert the motion here to a motion for summary judgment because, even considering the notice of claim, the Court agrees with Plaintiffs, with one exception,[2] that the notice of claim was not deficient in the ways raised

---

[1] To the extent that Defendants Ablett, Hanson and Wilson raise the same or similar issues in their Motion to Dismiss (Doc. 39), those arguments will be addressed here.

[2] As discussed below, the Court grants in part Defendants' requested relief to the extent that the FAC asserts state law claims against individual Defendants Adams, McBride, Ablett, Hanson and Wilson. Plaintiffs confirm that the FAC should not assert state law claims against those Defendants. Therefore, the Court need not treat the Motion for Judgment on the Pleadings as a motion for summary judgment to decide this matter.

- 4 -

1 by Defendants.

2 First, Plaintiffs have raised several state law claims against the individual Defendants, including a wrongful death claim pursuant to A.R.S. § 12-611. (Doc. 18). Defendants assert, however, that the notice of claim failed to address Defendants Adams, McBride, Ablett, Hanson and Wilson, and that Plaintiffs failed to serve them with a notice of claim. Therefore, according to Defendants, Plaintiffs are barred from bringing any state law claims against those Defendants. (Doc. 12, 34). Plaintiffs concede that they did not seek in the FAC to set forth any state law claims against the specified individual Defendants. (Doc. 19). To the extent, therefore, that the FAC could be read to state such claims, they are dismissed.

Second, Defendants assert that the notice of claim fails to name Maricopa County as a potential defendant or allege any wrongdoing by the county, but rather names the Clerk of the Maricopa County Board of Supervisors, which Defendants assert is a non-jural entity. (Doc. 12). This argument lacks merit. The notice of claim statute requires Plaintiffs to serve the notice of claim on a person authorized to accept service for the county. A.R.S. § 12-821.01(A). The notice of claim was addressed to and served on the Clerk of the Maricopa County Board of Supervisors. Defendants do not assert that the Clerk is not authorized to accept service. Rather, they seek to characterize the notice of claim as stating claims directly against the Clerk because it was so addressed. First, it is a complaint, not the notice of claim, that designates the parties to a lawsuit. The Clerk was never raised in the FAC as a party to Plaintiffs' claims. Second, nothing in the notice of claim suggests that the Clerk is a party as opposed to the designated agent for service. And, to the extent moving Defendants suggest that the notice of claim does not adequately set forth the factual basis for the claims against the county, a brief review of the notice itself discredits this argument. *Cf. Backus*, 220 Ariz. at 106, 203 P.3d at 504 (suggesting that a trial judge may review the adequacy of the facts establishing the basis of liability because § 12-821.01 requires a claimant to describe facts "sufficient to permit" the public entity to evaluate its liability).

Beginning on page 2 of the notice of claim, Plaintiffs state that employees of Maricopa County CHS were negligent and/or grossly negligent in caring for Mr. Phillippi,

- 5 -

causing his death. (Doc. 12, Ex. 1; Doc. 19). The notice of claim clearly asserts that "Maricopa County [is] vicariously liable for the actions of [its] employees, who, at the time of the acts described in this letter, were acting in the scope and course of their employment." (Doc. 12, Ex. 1). It also states that Plaintiffs are bringing a wrongful death action. The notice of claim then describes in detail the basis for liability, including what Plaintiffs believe to be Maricopa County CHS' role in Mr. Phillippi's death. Among the allegations in the notice of claim are that Maricopa County CHS failed to properly assess, monitor and treat Mr. Phillippi during the time he was detained; failed to track chronic illnesses among inmates, including Mr. Phillippi; failed to deliver needed medications; and then after Mr. Phillippi had at least one seizure, during which he hit his head, the county employees failed to provide him with needed medical care for financial reasons–specifically telling the ambulance dispatcher that Mr. Phillippi could wait thirty minutes for an ambulance and confirming that the county would not be billed. (Doc. 12, Ex. 1). It appears that attached to the notice of claim were a number of supporting documents, but those documents have not been provided to the Court. Nevertheless, Plaintiffs have met the statutory requirement of setting forth facts in the notice of claim that would allow the county to understand the basis upon which liability is claimed. *See Howland v. Arizona*, 169 Ariz. 293, 299, 818 P.2d 1169, 1175 (Ct. App. 1991) (noting that a "notice of claim should give the public entity notice of the nature of the claim, the general facts upon which the claim is based," and must contain "an assertion of liability on behalf of the State in regard to a specifically described event sufficient to allow the State to investigate and determine its potential liability" (internal quotation marks omitted)).[3]

Third, Defendants argue that Plaintiffs were required to specify a separate amount for which they would be willing to settle their claims against each Defendant referred to in the notice of claim. Put another way, the notice of claim provided that each Plaintiff was willing

---

[3] As an aside, Defendants appear to drop their argument regarding the adequacy of the facts in the notice of claim. This argument is not mentioned at all in the Reply, and in their conclusion, Defendants simply request that the state law claims asserted against Defendants Adams and McBride be dismissed. (Doc. 34).

- 6 -

1  to settle the case for $600,000 total, but did not list the settlement amount for each
2  Defendant. Plaintiffs contend that Arizona law does not require separate settlement demands
3  for each defendant, citing *Havasupai Tribe v. Ariz. Bd. of Regents*, 220 Ariz. 214, 204 P.3d
4  1063 (Ct. App. 2008).

5        This precise issue was addressed in *Havasupai*, in which the defendants argued that
6  plaintiff's failure to "state separate settlement demands made to each public entity or public
7  employee accused of wrongdoing . . . deprived [each defendant] of a meaningful opportunity
8  to separately settle his, her or its portion of the claim." *Id.* at 231, 204 P.3d at 1080. The
9  Arizona Court of Appeals interpreted the plaintiff's notice of claim as alleging harm that
10 resulted from the combined acts performed by a group of purported wrongdoers. *Id.* The
11 court concluded that nothing in the notice of claim statute required a claimant to assert
12 separate settlement demands against each wrongdoer. *Id.* The statute simply provides that the
13 claim must "contain a specific amount for which the claim can be settled and the facts
14 supporting that amount." A.R.S. § 12-821.01(A). The Defendants in this case have not cited
15 any authority that would suggest that the court of appeals' interpretation of the statute is
16 incorrect. The Court has no reason to second-guess the Arizona court's interpretation of a
17 state statute, and therefore, the Court agrees with Plaintiffs that the notice of claim is not
18 deficient for failure to assert separate settlement demands.

19 **II.    Motion to Dismiss**

20       Defendants Ablett, Hanson and Wilson also move to dismiss Plaintiffs' action
21 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 39). To survive
22 dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain
23 more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of
24 action"; it must contain factual allegations sufficient to "raise a right to relief above the
25 speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While "a
26 complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state
27 a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d
28 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard

1   "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a
2   complaint pleads facts that are merely consistent with a defendant's liability, it stops short
3   of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129
4   S.Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted).

5   When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll
6   allegations of material fact are taken as true and construed in the light most favorable to the
7   nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal
8   conclusions couched as factual allegations are not given a presumption of truthfulness, and
9   "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a
10  motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

11  Defendants assert that Plaintiffs have raised claims substantively based on Judge
12  Wake's remedial order in *Graves v. Arpaio*, CV-77-0479, and that under *Green v. McKaskle*,
13  788 F.2d 1116, 1123 (5th Cir. 1986), the Court must dismiss the § 1983 claims. *Green* does
14  state that "remedial court orders per se, apart from independent constitutional grounds
15  affirmed there, cannot serve as a substantive basis for a § 1983 claim for damages because
16  such orders do not create 'rights, privileges, or immunities secured by the Constitution and
17  laws.'" *Id.* (quoting § 1983). However, it also explains that a remedial order "might be
18  important for purposes of providing notice to prison officials of clearly established rights."
19  *Id.* at 1122–23 (citing as examples *Williams v. Bennett*, 689 F.2d 1370, 1386 (11th Cir. 1982)
20  ("[remedial court] order not only clearly defined the constitutional rights of the Alabama
21  prisoners, but also served to put the defendant[s] on notice"); *Jackson v. State of Miss.*, 644
22  F.2d 1142, 1146 (5th Cir. 1981) (remedial decree "clearly established . . . constitutional
23  rights")). In their Reply, Defendants also suggest that Plaintiffs are attempting to assert some
24  additional cause of action for "deliberate indifference to a judicial opinion." (Doc. 47).

25  In the FAC, Plaintiffs reference Judge Wake's remedial order in the section that sets
26  forth the facts and established rights related to Plaintiffs' § 1983 claim. The FAC alleges,
27  however, that the underlying constitutional violation being asserted for § 1983 purposes is
28  a violation of Mr. Phillippi's Eighth Amendment rights. (Doc. 18). Thus, Plaintiffs' reference

- 8 -

1 to the remedial order appears to be neither an attempt to raise some additional indifference
2 claim nor to use that reference as the substantive basis for the § 1983 claim. Rather, Plaintiffs
3 contend that the order supports their argument that Defendants were on notice of Mr.
4 Phillippi's recognized rights and of the continuing violations of those rights in the Maricopa
5 County jail system. *See Green*, 788 F.2d at 1122–23. Accordingly, Defendants' motion as
6 to that point is denied.

7 Defendants also argue that Plaintiffs have failed to state a claim against Deputy
8 County Manager Sandi Wilson, in her official capacity. (Doc. 39).[4] They assert the following
9 arguments: (1) that Plaintiffs have failed to assert facts that show Wilson personally
10 participated in the violation of Mr. Phillippi's rights; and (2) that the claim against Wilson
11 in her official capacity is really a claim against Maricopa County, and therefore the claims
12 against her should be dismissed. (Doc. 39).

13 An official may be liable under § 1983 if a plaintiff alleges facts that support the
14 inference that the official enacted or enforced a policy or practice that resulted in the denial
15 of the plaintiff's constitutional rights. *See Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004)
16 ("County officials can be held liable under § 1983 if they act as 'lawmakers or . . . those
17 whose edicts or acts may fairly be said to represent official policy.'" (citing *Monell v. Dep't
18 of Soc. Servs.*, 436 U.S. 658, 694 (1978))). Plaintiffs allege in their Complaint that, upon
19 information and belief, Wilson is a final policymaker and "acts as the operational head of
20 CHS through control of the allocation of resources and the adoption or rejection of systems
21 for addressing" various deficiencies. (Doc. 18, 46). They allege that Wilson was put on
22 notice "by various individuals with expertise in health care that the policies and practices in

---

[4] At one point, Defendants seem to be arguing that Defendant Adams, who is not one of the Defendants included in the Motion to Dismiss, should also be dismissed as a party. In arguing that Plaintiffs have failed to state a claim against Defendant Wilson, Defendants add Defendant Adams by including her in parentheses next to each argument related to Defendant Wilson. Defendant Adams did not join the other Defendants in moving to dismiss Plaintiffs' claim, and therefore, to the extent that Defendants attempt to argue on her behalf, the Court will not consider those arguments.

1  place for the maintenance of medical records are inadequate." They assert that these policies, among others, have resulted in serious injury and death of pretrial detainees. Additionally, the Complaint asserts that Wilson has notice that medical personnel have a "pattern or practice" of failing to pass out medications, causing serious injury or death to detainees. Moreover, the Complaint states that Wilson was aware of, but failed to implement, an order in the *Graves v. Arpaio* case, "requiring that pretrial detainees within the Maricopa County jail system receive health screening prior to placement in the general population sufficient to identify and begin treatment of physical illnesses and provide necessary medication without interruption." At this stage, Plaintiffs have pled enough facts to state a claim to relief that is plausible on its face. If Wilson did in fact enact or enforce a policy or practice that resulted in the denial of Mr. Phillippi's constitutional rights, then she may be liable for those violations separate from the county's liability. Accordingly, she is properly named as a party and the claim against Wilson will not be dismissed.

**IT IS THEREFORE ORDERED**:

1. Defendants' Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED IN PART AND DENIED IN PART**. It is granted to the extent that the FAC states any state law claims against individual Defendants Adams and McBride. It is denied on all other grounds asserted in the motion.

2. Defendants' Motion to Dismiss (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**. It is granted to the extent that the FAC states any state law claims against individual Defendants Ablett, Hanson and Wilson. It is denied on all other grounds asserted in the motion.

3. Plaintiffs' Motion to Convert Motion for Judgment on the Pleadings to a Motion for Summary Judgment (Doc. 20) is **DENIED** as moot.

DATED this 23rd day of February, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge